**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROBERT N. JONES** | **CIVIL ACTION** |
| **VERSUS** | **No. 26-289** |
| **W&T OFFSHORE INC. ET AL.** | **SECTION I** |

**ORDER AND REASONS**

Before the Court is a motion[1] for partial summary judgment filed by defendants W&T Offshore Inc. ("W&T Offshore"), REC Marine Logistics, LLC ("REC Marine"), and Gulf Offshore Logistics, LLC ("GOL") (collectively, "defendants"). For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

This case arises from an accident aboard the M/V GOL WARRIOR on June 5, 2024.[2] Plaintiff Robert N. Jones's ("Jones") was employed as a deckhand by REC Marine.[3] While working on the vessel, Jones informed his supervisor that he felt seasick.[4] He was given permission to rest on a platform owned by W&T Offshore.[5] To board the platform, he was to be transferred via personnel basket.[6] However, according to Jones, the basket operator began raising the basket before he had placed

---

[1] R. Doc. No. 44.
[2] R. Doc. No. 44-5 ¶ 28 (defendants' statement of uncontested material facts); *see* Local Rule 56.2 ("All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement.").
[3] R. Doc. No. 44-2, at 6.
[4] R. Doc. No. 44-5 ¶ 29.
[5] *Id.* ¶ 30.
[6] *Id.* ¶ 31.

both feet inside, causing him to fall back onto the ship.[7] After returning to shore, Jones received medical attention and was cleared to return to work.[8] Since the accident, Jones has undergone treatment for back and neck pain.[9] Additionally, on January 19, 2025, Jones was admitted to a hospital after experiencing a stroke.[10] He does not allege that the accident aboard the M/V GOL WARRIOR caused the stroke.[11]

On February 9, 2026, Jones filed the present action against defendants.[12] He alleges that REC Marine and GOL are sister companies.[13] Accordingly, he brings claims for Jones Act negligence, unseaworthiness, and maintenance and cure against both REC Marine and GOL.[14] He also brings a claim for negligence against W&T Offshore pursuant to general maritime law.[15]

On September 29, 2026, defendants filed a motion for partial summary judgment, arguing that (1) Jones is not entitled to maintenance and cure pursuant to *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968), because he intentionally misrepresented his medical history during the hiring process, (2) Jones cannot recover punitive damages from W&T Offshore pursuant to *Scarborough v. Clemco Industries*, 391 F.3d 660 (5th Cir. 2004), (3) Jones's post-accident stroke is the

---

[7] R. Doc. No. 1 ¶¶ 10–12.
[8] R. Doc. No. 44-5 ¶¶ 33, 39.
[9] *Id.* ¶¶ 40–42.
[10] R. Doc. No. 44-3, at 64.
[11] R. Doc. No. 53, at 1.
[12] R. Doc. No. 1.
[13] *Id.* ¶ 8.
[14] *Id.* ¶¶ 13–23.
[15] *Id.* ¶¶ 24–26.

superseding cause of some of his damages, and (4) Jones is not entitled to maintenance and cure for his post-accident stroke.[16]

Jones filed a response on October 7, 2026, contesting only the application of *McCorpen* to his maintenance and cure claim.[17] Defendants filed a reply on October 12, 2026.[18] During a subsequent telephone conference, Jones's counsel informed the Court that he is not seeking maintenance and cure for his post-accident stroke.[19] The Court permitted and ordered Jones to file an additional response addressing his ability to recover punitive damages against W&T Offshore and whether his post-accident stroke is a superseding cause of some of his damages.[20] Jones inexplicably had not responded to these issues in his original opposition. Jones filed his supplemental response on November 11, 2026,[21] only addressing the availability of punitive damages. Defendants filed a supplemental reply on November 13, 2026.[22]

## II. LEGAL STANDARD

Summary judgment is proper if, after reviewing the record, the Court determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which

[16] R. Doc. No. 44, at 1.
[17] R. Doc. No. 45.
[18] R. Doc. No. 48.
[19] R. Doc. No. 53, at 1.
[20] *Id.* at 2.
[21] R. Doc. No. 57.
[22] R. Doc. No. 59.

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the nonmovant will bear the burden of proof at trial, then the movant "can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claim." *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 659 (5th Cir. 2025); Fed. R. Civ. P. 56(c)(1)(B). "When the movant also carries the burden of proof at trial, as when he asserts an affirmative defense, his burden is even higher; he must 'establish beyond peradventure *all* of the essential elements of the claim or defense.'" *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (emphasis in original) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

If the moving party meets its burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). This requires more than "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 860 (5th Cir. 2004). Instead, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1076.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . ., the material may be

presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (alterations in original) (quoting 11 *Moore's Federal Practice* § 56.91 (3d ed. 2017)). The Court "must read all evidence in the light most favorable to the nonmoving party and likewise draw all reasonable inferences in that party's favor." *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019). But the Court will "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

## III. ANALYSIS

### A. The *McCorpen* Defense

"[A] seaman injured in his employ enjoys a right to maintenance and cure—a small daily stipend to pay for food, lodging, and basic medical care." *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 725 (5th Cir. 2013). However, maintenance and cure are not owed if the "seaman procure[d] his employment by 'intentionally' and 'fraudulently' concealing a material medical condition causally related to the injury later sustained." *Id.* at 726 (quoting *McCorpen*, 396 F.2d at 548–49). If an employer "require[d] the seaman to submit to medical examination as part of its hiring process," to successfully invoke the *McCorpen* defense, the employer must prove that "(1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury

complained of in the lawsuit." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (per curiam); *see McCorpen*, 396 F.2d at 548–49.

The first prong of the *McCorpen* defense "is essentially an objective inquiry." *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005). "The employer need only show that the seaman '[f]ail[ed] to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information.'" *Meche v. Doucet*, 777 F.3d 237, 247 (5th Cir. 2015) (alterations in original) (quoting *Brown*, 410 F.3d at 174); *see also Jauch*, 470 F.3d at 212 ("[A] seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly desired, risks forfeiture of his maintenance and cure benefits."). The employer need not prove that the seaman had the "subjective intent to conceal" his medical condition. *Meche*, 777 F.3d at 247.

Defendants argue that Jones intentionally misrepresented or concealed medical facts on two forms used in the hiring process. First, Jones completed a medical questionnaire during a preemployment physical at Occupational Medicine Services, L.L.C. ("OMS").[23] According to defendants, the questionnaire instructed him to "[c]ircle Y for YES and N for NO if you currently have the following symptoms or have significantly in the past."[24] He circled "N" next to the symptoms "[i]njured or experienced back pain" and "[i]njured or experienced neck pain."[25] Second, Jones completed an application for a medical certificate from the United States Coast Guard

[23] R. Doc. No. 44-2, at 37–38.
[24] *Id.* at 37.
[25] *Id.*

("Coast Guard").[26] According to defendants, one question on the application asked him: "[t]o the best of your knowledge, have you ever had, required treatment for, or do you presently have any of the following conditions? If no, please mark the NO box below. If yes, please mark the YES box below, and if previously reported (PR), mark the PR box below."[27] He marked the "NO" box next to the condition: "[b]ack, neck or joint problems that impair movement or cause debilitating pain."[28]

Defendants argue that Jones misrepresented his medical history in his answers to those questions, because he had suffered prior injuries to his neck and back. In his responses to defendants' interrogatories, Jones states that he was involved in a traffic accident in 2010, after which he suffered from "lower lumbar strain" that "resolved within approximately two to three months." He also states that he sustained a "remote whiplash injury . . . approximately fourteen years before" the accident aboard the M/V GOL WARRIOR.[29] Jones claims that he "received no ongoing treatment, was assigned no disability, and had no work restrictions arising from either condition."[30]

On April 28, 2011, Jones was injured in another traffic accident while he was in the custody of the Terrebonne Parish Sheriff's Office.[31] Afterward, he "complained of pain in his lower back, left shoulder and neck,"[32] and he was later diagnosed with

[26] *Id.* at 41.
[27] *Id.* at 42.
[28] *Id.*
[29] *Id.* at 87; R. Doc. No. 44-4, at 3.
[30] R. Doc. No. 44-2, at 87.
[31] *Id.* at 117.
[32] *Id.* at 118.

lumbago and cervicalgia.[33] He received $4,000 to settle his claims arising out of the accident, "particularly on account of all bodily injuries, known and unknown, which has resulted or may in the future develop."[34] On January 11, 2017, Jones was involved in a third traffic accident.[35] One week later, he sought treatment for acute bronchitis, back pain, and a sore throat.[36] He received $2,500 to settle his claims arising out of this accident.[37]

Defendants have failed to demonstrate that Jones intentionally misrepresented or concealed medical facts in his responses to the OMS or Coast Guard forms. The OMS form asked Jones whether he "*currently* ha[d] . . . or ha[d] *significantly* in the past" injured his back or neck or experienced back or neck pain.[38] Similarly, the Coast Guard form asked Jones whether he "ever had, required treatment for, or . . . presently ha[d]" back, neck, or joint problems that "*impair[ed] movement* or cause[d] *debilitating* pain."[39]

Jones describes his 2010 injuries as a "strain" and "whiplash."[40] The medical records for the 2011 and 2017 accidents that have been provided to the Court merely

---

[33] *Id.* at 119. The National Library of Medicine lists lumbago as a synonym for low back pain and cervicalgia as a synonym for neck pain. *See Low Back Pain*, Nat'l Libr. of Med., https://www.ncbi.nlm.nih.gov/medgen/7389 (last visited Nov. 9, 2026); *Neck Pain*, Nat'l Libr. of Med., https://www.ncbi.nlm.nih.gov/medgen/861 (last visited Nov. 9, 2026).
[34] R. Doc. No. 44-2, at 122.
[35] *Id.* at 124.
[36] *Id.* at 125–28.
[37] *Id.* at 124.
[38] *Id.* at 37 (emphasis added).
[39] *Id.* at 42 (emphasis added).
[40] *Id.* at 87.

state that Jones reported back and neck pain.[41] The discharge instructions for his 2017 injury state that "[b]ack pain is very common" and instructed Jones to "increase [his] fluids" and take "[T]ylenol and ibuprofen for fever or pain."[42] There is no indication that any of Jones's injuries impaired his movement or caused him debilitating pain, and, reading the record in the light most favorable to Jones, it is questionable whether his injuries were significant. Accordingly, whether his back or neck injuries were significant, impaired his movement, or caused him debilitating pain are material facts as to which there is a genuine dispute.

Defendants argue that the specific language of the OMS and Coast Guard forms "do[es] not matter," because this prong of the *McCorpen* defense is objective.[43] However, the use of the terms "significantly" and "impair movement or cause debilitating pain" in these forms determines whether Jones's responses to them were objectively truthful. On the present record,[44] the Court cannot conclude that the OMS and Coast Guard forms were "obviously designed to elicit" information about his prior injuries, *Doucet*, 777 F.3d at 247 (quoting *Brown*, 410 F.3d at 174), or that defendants "plainly desired" information about those injuries, *Jauch*, 470 F.3d at 212.

Defendants also argue that there is no genuine dispute as to these facts because Jones failed to deny their statement of uncontested material facts.[45] This is

---

[41] *Id.* at 117–19, 125.
[42] *Id.* at 125, 128.
[43] R. Doc. No. 48, at 6.
[44] Jones stated that he would supplement his response with citations to the transcript of his deposition, but he never did. R. Doc. No. 45, at 2 n.2. Therefore, the Court did not consider his deposition testimony. Fed. R. Civ. P. 56(c)(3).
[45] R. Doc. No. 48, at 3.

incorrect. Jones filed a statement of contested material facts contradicting the relevant facts put forth in defendants' statement.[46] This is sufficient under the Local Rules. *See* Local Rule 56.2. Defendants rely on *Bourgeois v. W & T Offshore, Inc.* to support their position, but in that case, the plaintiff did not support his factual assertions with citations to the record. No. 13-294, 2013 WL 4501326, at *2 (E.D. La. Aug. 21, 2013) (Africk, J.). Here, Jones not only properly cited the record, but more importantly, "show[ed] that the materials cited [by defendants] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(B).

The content of Jones's statement of contested facts is also irrelevant, because defendants bear the initial burden to establish each element of the *McCorpen* defense "beyond peradventure." *Guzman*, 18 F.4th at 160 (quoting *Fontenot*, 780 F.2d at 1194). "Only if the movant succeeds must the nonmovant 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017)). Defendants have not met their initial burden, so they are not entitled to summary judgment notwithstanding any alleged procedural deficiencies in Jones's response. *See* Fed. R. Civ. P. 56 advisory committee note to 2010 amendment ("[S]ummary judgment cannot be granted by default even . . . when an attempted response fails to comply with Rule 56(c) requirements.").

Because defendants have failed to establish the first prong of the *McCorpen* defense, they are not entitled to summary judgment on this issue. Accordingly, the

---

[46] R. Doc. No. 45-1 ¶¶ 1–2.

Court need not determine whether defendants carried their burden as to the other two prongs. *Meaux v. Cooper Consol., LLC*, No. 19-10628, 2021 WL 1577842, at *4 n.50 (E.D. La. Apr. 22, 2021) (Ashe, J.).

### B. Punitive Damages against W&T Offshore

In *Scarborough v. Clemco Industries*, the Fifth Circuit held that "neither one who has invoked his Jones Act seaman status nor his survivors may recover nonpecuniary damages from non-employer third parties." 391 F.3d at 668. Defendants argue that *Scarborough* bars Jones's claim for punitive damages against W&T Offshore.[47]

Defendants initially argue that, because Jones failed to address this argument in his first response to their motion, they are entitled to summary judgment on this issue by default.[48] However, "[a] motion for summary judgment cannot be granted simply because there is no opposition." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (quoting *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)); *see also* Fed. R. Civ. P. 56 advisory committee note to 2010 amendment ("[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion . . . ."). Therefore, the Court must determine whether defendants are "entitled to" summary judgment on this issue. Fed. R. Civ. P. 56(e)(3).

---

[47] R. Doc. No. 44-1, at 16.
[48] R. Doc. No. 48, at 3–4; R. Doc. No. 59, at 1–2.

In *Miles v. Apex Marine Corp.*, the Supreme Court limited general maritime actions for wrongful death to the recovery of pecuniary losses. 498 U.S. 19, 30–33 (1990). The Court determined that this limitation was necessary to create "a uniform rule applicable to all actions for the wrongful death of a seaman, whether under [the Death on the High Seas Act ("DOHSA")], the Jones Act, or general maritime law." *Id.* at 33. The Fifth Circuit has interpreted *Miles* to stand for the proposition that when "the factual setting of a case . . . is covered by a statute like the Jones Act or DOHSA, and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well." *Scarborough*, 391 F.3d at 667 (quoting *Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496, 1506 (5th Cir. 1995) (en banc)).

*Scarborough* concerned a general maritime action by the survivors of a Jones Act seaman against a non-employer third party. *Id.* at 666. The Jones Act does not allow a seaman to recover punitive damages from his employer. *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 388 (5th Cir. 2014) (en banc). However, because the defendant in *Scarborough* was not the seaman's employer, the survivors' claim was governed by general maritime law rather than the Jones Act. 391 F.3d at 667. The *Scarborough* court held that the *Miles* "uniformity principle" prevents a seaman from recovering nonpecuniary damages against a non-employer third party pursuant to general maritime law. *Id.* at 668.

Despite its obvious application to this case, Jones's counsel urges this Court to disregard *Scarborough*, arguing that it has been overruled by an intervening

Supreme Court decision, *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009). In *Townsend*, the Court held that a Jones Act seaman can recover punitive damages "for the willful and wanton disregard of the maintenance and cure obligation." 557 U.S. at 424. Jones's counsel cites two cases from this district in support of his position that *Townsend* overruled *Scarborough*: *Collins v. A.B.C. Marine Towing, L.L.C.*, No. 14-1900, 2015 WL 5254710 (E.D. La. Sep. 9, 2015) (Fallon, J.), and *Hume v. Consol. Grain & Barge, Inc.*, No. 15-0935, 2016 WL 1089349 (E.D. La. Mar. 21, 2016) (Zainey, J.).[49] In *Collins*, Judge Fallon wrote that, because *Townsend* had "specifically limited the broad application of *Miles*, *Scarborough* is inconsistent with current Supreme Court precedent." 2015 WL 5254710, at *5. In *Hume*, Judge Zainey "adopt[ed] the reasoning set forth in *Collins*." 2016 WL 1089349, at *2.

But Jones's counsel failed to bring to the Court's attention that Judge Fallon changed his view. In *Wade v. Clemco Industries Corp*, decided after *Collins*, Judge Fallon wrote that "the Fifth Circuit has now made it clear that under both the Jones Act and general maritime law, a seaman's damages against both employers and non-employers are limited to pecuniary losses." No. 16-502, 2017 WL 434425, at *5 (E.D. La. Feb. 1, 2017). He came to the same conclusion in *Rinehart v. National Oilwell Varco L.P.*, No. 15-6266, 2017 WL 1407699, at *4 (E.D. La. Apr. 20, 2017).

Jones's counsel also failed to inform the Court of the near-uniform authority in this courthouse that *Scarborough* controls this issue. *See, e.g.*, *In re Bonvillian Marine Serv., Inc.*, No. 19-14651, 2022 WL 3280110, at *2 (E.D. La. Aug. 11, 2022)

[49] R. Doc. No. 57, at 2.

(Vitter, J.); *In re Adriatic Marine, LLC*, No. 20-1488, 2022 WL 1239950, at *2 (E.D. La. Apr. 27, 2022) (Barbier, J.); *In re Am. River Transp. Co.*, No. 20-416, 2020 WL 13280704, at *1 (E.D. La. Oct. 22, 2020) (Guidry, J.); *Wiltz v. M-I, LLC*, 356 F. Supp. 3d 591, 597 (E.D. La. 2018) (Brown, J.); *Rockett v. Belle Chasse Marine Transp., LLC*, 260 F. Supp. 3d 688, 694 (E.D. La. 2017) (Lemmon, J.); *Melancon v. Gaubert Oil Co., Inc.*, No. 17-2905, 2017 WL 3438346, at *3 (E.D. La. Aug. 10, 2017) (Engelhardt, J.); *Schutt v. All. Marine Servs. LP*, No. 16-15733, 2017 WL 2313199, at *2 (E.D. La. May 26, 2017) (Lemelle, J.); *Howard v. Offshore Liftboats, LLC*, No. 13-4811, 2015 WL 7428581, at *2 (E.D. La. Nov. 20, 2015) (Morgan, J.).

Considering Jones's arguments on the merits, he is incorrect to suggest that *Townsend* overruled *Scarborough*. Both the Fifth Circuit sitting *en banc* and the Supreme Court have limited *Townsend* to actions for maintenance and cure and reaffirmed *Miles* as the general rule. *See McBride*, 768 F.3d at 391 (observing that the *Townsend* court "took pains to distinguish that maintenance and cure case from *Miles*"); *The Dutra Grp. v. Batterton*, 588 U.S. 358, 369 (2019) (explaining that *Townsend* was "based on the established history of awarding punitive damages for certain maritime torts, including maintenance and cure," and thus did not extend to unseaworthiness claims). Therefore, *Townsend* no longer threatens the reasoning of *Scarborough*.

This Court also cannot lightly disregard the precedential weight of *Scarborough*. As the Fifth Circuit has explained, "for a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to

the case before [the court]' and must 'unequivocally' overrule prior precedent." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (alterations in original) (quoting *Martin v. Medtronic, Inc.,* 254 F.3d 573, 577 (5th Cir. 2001)). *Townsend* did not unequivocally overrule the holding of *Scarborough*. Therefore, *Scarborough* remains good law and prevents Jones from bringing a claim for punitive damages against W&T Offshore.

The conduct of Jones's counsel in briefing this issue was disappointing. Not only has his research been woefully insufficient, but it was also inexcusably late. Jones's initial response, which was filed on October 7, 2026, did not address the issue of punitive damages at all.[50] After the Court began researching this motion, it convened a status conference on November 6, 2026, and gave Jones additional time to respond because of this issue's importance.[51] On that call, Jones's counsel suggested that he might abandon this position because he did not know if he could offer nonfrivolous arguments to support it. However, pursuant to the Court's order, he informed the Court on the morning of November 9, 2026, that he would continue to defend this position. Even with an extra month to formulate a response, Jones's counsel clearly failed to thoroughly research this issue.

**C. Superseding Cause**

Despite having two opportunities to do so, Jones has failed to respond to defendants' argument that his stroke is a superseding cause of some of his damages.

[50] R. Doc. No. 45, at 1.
[51] R. Doc. No. 53, at 2.

As explained above, the Court cannot grant defendants' request to award them summary judgment on this issue by default.[52] However, by failing to respond, Jones has forfeited his ability to contest defendants' characterization of relevant material facts as uncontested. *See* Local Rule 56.2; Fed. R. Civ. P. 56(e)(2).

"Under the Jones Act and general maritime law, an injured seaman is entitled to monetary recovery for past, present and future loss of earning capacity and wages, medical expenses, and pain and suffering resulting from an injury caused by negligence and/or unseaworthiness." *Dunn v. Marquette Transportation Co., LLC*, No. 16-13545, 2017 WL 3887521, at *10 (E.D. La. Sept. 6, 2017) (Fallon, J.), *aff'd*, 744 F. App'x 888 (5th Cir. 2018). Defendants argue that, because Jones's stroke is a superseding cause,

> any past and future loss of earnings, past and future medical expenses, and alleged pain and suffering due to the stroke should be precluded from recovery against the [d]efendants as a matter of law. Mr. Jones's stroke also cuts off potential economic loss damages claimed with respect to his cervical and lumbar spine claims.[53]

Jones has already conceded that he has not alleged that the stroke was caused by the accident aboard the M/V GOL WARRIOR.[54] He has also expressly abandoned any claims for damages from injuries arising from the stroke.[55] This includes medical expenses, maintenance, and pain and suffering.[56] Therefore, the only remaining issue

---

[52] R. Doc. No. 48, at 4–5.
[53] R. Doc. No. 44-1, at 17.
[54] R. Doc. No. 53, at 1. This is also a material fact that the Court must deem admitted for the purposes of this motion, because Jones failed to contest it in his statement of contested material facts. R. Doc. No. 44-5 ¶ 70.
[55] R. Doc. No. 53, at 1.
[56] When determining damages, the jury will be instructed not to consider Jones's pain and suffering due to the stroke or any medical expenses relating to the stroke.

is determining what post-stroke loss of earnings or economic loss damages Jones may recover from defendants.

This analysis is guided by the doctrine of superseding cause, which applies in admiralty law. *Bommarito v. Belle Chasse Marine Transp., L.L.C.*, 159 F.4th 297, 306 (5th Cir. 2025) "The superseding cause doctrine applies where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Id.* (quoting *Stolt Achievement, Ltd. v. Dredge B.E. LINDHOLM*, 447 F.3d 360, 367–68 (5th Cir. 2006)); *see also Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 652 (5th Cir. 1992).

Even if defendants are at fault for Jones's accident, his stroke constitutes a superseding cause of some of his alleged damages. The stroke was of a different origin than the accident and it "was not reasonably foreseeable" to defendants that he would have the stroke. *Bommarito*, 159 F.4th at 308. Therefore, defendants are not liable for Jones's lost earnings caused by the stroke, even if he would have lost those earnings due to the accident alone.[57] However, contrary to defendants' argument, they remain liable for lost earnings that are attributable to Jones's injuries from the accident, but not attributable to the stroke.

---

[57] Defendants cite *Evans v. United Arab Shipping Co. (S.A.G.)*, 790 F. Supp. 516 (D.N.J. 1992), which concerned a seaman's preexisting condition that had been aggravated by the employer's negligence. R. Doc. No. 44-1, at 23. However, in this case, there is no allegation that the conditions leading to Jones's stroke were aggravated by the accident.

At this juncture, the record is too incomplete for the Court to provide a more specific ruling on this issue. Defendants have filed a report by Dr. Archibald Melcher, III, a neurologist they retained to examine Jones.[58] The report states that "[b]ased upon the neurological examination that I performed, which revealed left hemiparesis with spastic gait, it is my opinion that he cannot return to work as a deckhand. He may be able to perform a sedentary job."[59] However, defendants have not provided evidence that these symptoms, hemiparesis and spastic gait, were caused exclusively by the stroke. Without evidence that the stroke would have prevented Jones from returning to work as a deckhand even if the accident had not occurred, the Court cannot conclude that the stroke is the superseding cause of his inability to work as a deckhand.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion[60] for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**. Summary judgment with respect to the *McCorpen* defense is **DENIED**, summary judgment with respect to Jones's claim for punitive damages against W&T Offshore is **GRANTED**, and summary judgment with respect to Jones's stroke as a superseding cause is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

---

[58] R. Doc. No. 44-3, at 13, 23.
[59] *Id.* at 22; *see also id.* at 9.
[60] R. Doc. No. 44.

New Orleans, Louisiana, November 19, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**